IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SEILLER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>TARGET CORPORATION,<br><br>      Defendant. | Civil Action No.: 1:20-cv-07818<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthew Seiller ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant Target Corporation ("Target" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Target's Up&Up™ brand of acetaminophen[1] for infants in the United States.

2. Defendant is one of the largest chains in the United States, with more than 1,800 stores in all 50 states. Defendant markets, advertises, and sells various products, including, but not limited to pain reliever and fever reducers, to consumers.

3. Defendant distributes its own brand of pain reliever and fever reducer under the Up&Up™ label, including Infants' Dye-Free Acetaminophen Fever Reducer/Pain Reliever Liquid in all flavors (the "Product").

4. Acetaminophen, the active ingredient in the Products, can be dangerous, and even

---

[1] Acetaminophen is sometimes colloquially referred to by the brand name "Tylenol."

1

fatal, if taken in large doses. The potential risks associated with an acetaminophen overdose terrifies parents and caregivers and causes them to be extra careful when buying medicine for their children. Unfortunately for consumers, Defendant exploits this fear by misleading consumers through the advertisement, marketing, selling, and pricing of the Products.

5. Defendant's advertisements, marketing representations, and placement of the Product in its stores are misleading, untrue, and likely to deceive reasonable consumers. Defendant purposely packages Infants' Products with distinctive pink lettering of the word "Infants'"" on the product's front-label, while packaging Children's Products with distinctive pink lettering of the word "Children's" on the product's front-label. Accordingly, Defendant distributes, markets, and sells the Product in a manner which deceives reasonable consumers into thinking that infants cannot safely take Children's Products.

6. Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiffs, at a substantially higher price than Children's Products. In stores, the Infants' Products cost more than two times as much per ounce than Children's Products for the same amount of medicine.

7. No reasonable consumer would pay over than two times more for Infants' Products, as compared to Children's Products, unless he or she was deceived into thinking that infants cannot safely take Children's Products.

**PARTIES**

8. Plaintiff Matthew Seiller is a citizen of New York who resides in the Bronx, New York. In or around January 2020, Mr. Seiller purchased the Product from a Target store in the Bronx. Prior to purchase, Mr. Seiller saw, read, and relied on the Product's labeling, which stated that it was specifically formulated and designed for infants. Mr. Seiller believed that the

Infants' Products were different than the Children's Products. If Mr. Seiller knew that the Infants' Products were no different than the Children's Products, and had Defendant not made the false, misleading, and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed, he would not have purchased the Infants' Products at all, or would have only been willing to pay a substantially reduced price for the Product, had he known that these representations were false and misleading. The Infants' Products that Mr. Seiller received were worth less than the Infants' Products for which he paid. Mr. Seiller was injured in fact and lost money as a result of Defendant's deceptive conduct. However, Mr. Seiller would consider purchasing the Product in the future if he knew that the Infants' Products' labels were truthful and non-misleading.

9. Defendant Target Corporation is headquartered in Minneapolis, Minnesota. Defendant maintains stores in all 50 states and does substantial business in the state of New York.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District. Further, venue is appropriate in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

12. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## FACTUAL ALLEGATIONS

13. Defendant distributes two different pediatric OTC painkillers—Infants' Products and Children's Products.

14. Prior to the acts complained herein, liquid acetaminophen marketed for infants was only available in 80 mg/0.8 mL or 80 mg/mL concentrations, while liquid acetaminophen marketed for "children" was only available in 160 mg/5 mL concentrations.

15. The difference in concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, thereby causing them to overdose.

16. Between 2000 and 2009, U.S. Food and Drug Administration (FDA) received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied to mix-ups involving the two pediatric medicines.

17. On December 22, 2011, the FDA informed the public that liquid acetaminophen marketed for infants would only be available in 160 mg/5 mL in order to prevent confusion and accidental acetaminophen toxicity.

18. Since then, **the only differences** in liquid acetaminophen marketed for infants versus children has been the price and dosing instrument included with the product – Defendant's Infants' Products come with a syringe while the Children's Products come with a plastic cup.

19. Infants' Products and Children's Products have the same 160 milligram concentration of acetaminophen, and are therefore interchangeable and suitable for infants and children, adjusting the dosage based only on the weight and age of the child.

20. Defendant has been engaging in the unfair, unlawful, deceptive, and fraudulent practice of manufacturing, marketing and selling the same product as two unique medicines, such that parents and caregivers mistakenly believe that they cannot purchase the significantly cheaper Children's Products for an infant.

21. Defendant misleads consumers by using deceptive marketing techniques which obscure critical facts—including that infants can safely take Children's Products and that the Products are in fact exactly the same—from consumers nationwide.

22. Defendant deceives consumers so that they will buy the deceptively-labeled Infants' Products for infants, which cost significantly more than Children's Products, even though the Products contain the same exact amount of acetaminophen in the same dosage amounts.

23. There are various conventions applied in sub-dividing the pediatric population by age. The FDA classification for infants and children is as follows: infant (1 month to 2 years) and children (2 to 12 years).[2] Consumers may reasonably believe that a product that is labeled and marketed for consumption by infants should only be consumed by those between the ages of one (1) month to two (2) years old.

24. Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

25. Specifically, Defendant distinguishes the two products by calling one "Infants'" and one "Children's" in distinctive pink lettering:

---

[2] *See* http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited September 22, 2020).

5



26. Additionally, at the top of the Infants' Products, Defendant states "Compare to active ingredient in Infants' Tylenol® Oral Suspension," while the top of the Children's Products Defendant states, "Compare to active ingredient in Children's Tylenol® Oral Suspension." Through this wording, Defendant attempts to deceive reasonable consumers into believing that the active ingredient in Infant Tylenol® is different than the active ingredient in Children's

6

Tylenol®, when it knows that the active ingredient is the same, further inducing reasonable consumers to purchase the more expensive Infants' Products.

27. Defendant further misleads consumers by placing "Ages 2-3" on the Infants' Products. Despite the inclusion of an age range, reasonable consumers believe that a product specifically labeled "infants" is just that, for infants. No reasonable consumer (as outlined by FDA age classification, which confirms an infant is ages 1 month to 2 years) would believe that an "infant" is a 2 or 3-year-old.

28. Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher cost than the Children's Products. In stores, Infants' Products cost over twice as much per ounce over Children's Products for the same amount of medicine.

29. Defendant knows that consumers, such as Plaintiff, are typically more cautious about what medicine they give to infants, especially when they are giving their infant a product that has caused accidental deaths in the past.

30. No reasonable consumer would be willing to pay more money—and certainly not over twice as much per ounce—for Infants' Products unless he or she had good reason to believe that Infants' Products were different than or superior to the Children's Products.

31. Indeed, Defendant's misrepresentations and omissions, as described above, would be important and material to a reasonable consumer in deciding whether to purchase Infants' Products. In fact, Defendant's misrepresentations and omissions were designed to and did mislead Plaintiff and consumers.

32. Defendant only made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiff and other reasonable consumers to

7

purchase or otherwise pay a price premium for Infants' Products based on the belief that Infants' Products were specifically designed for infants and different from the identical Children's Products. Defendant profited by selling Infants' Products to thousands of unsuspecting consumers.

## CLASS REPRESENTATION ALLEGATIONS

33. Mr. Seiller seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

34. Mr. Seiller also seeks to represent a subclass defined as all Class members who purchased the Product in New York (the "New York Subclass").

35. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

36. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Product is false and misleading.

37. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of that purchase.

38. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

39. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

40. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

41. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

42. By the acts and conduct alleged herein, Defendant has committed unfair or deceptive acts and practices by making false representations and omissions on the label of the Product.

43. The foregoing deceptive acts and practices were directed at consumers.

44. The foregoing deceptive acts and practices are misleading in a material way because the Infants' Products and Children's Products are identical, and the Children's Products are in fact suitable and safe for infants, despite the fact that Defendant advertises, markets and sells the Product at a substantially higher price.

45. Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Products if they had known that the because the Infants' Products and Children's Products are identical, and thus are interchangeable, and (b) they overpaid for the Product on account of the misrepresentation and omission that the Children's Products are in fact suitable and safe for infants.

46. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

47. Plaintiff incorporates by by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

49. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation

of Section 350 of the New York General Business Law because the Infants' Products and Children's Products are identical, and the Children's Products are in fact suitable and safe for infants, despite the fact that Defendant advertises, markets and sells the Product at a substantially higher price.

50. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

51. This misrepresentation has resulted in consumer injury or harm to the public interest.

52. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products if they had known that the because the Infants' Products and Children's Products are identical, and thus are interchangeable, and (b) they overpaid for the Product on account of the misrepresentation and omission that the Children's Products are in fact suitable and safe for infants.

53. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
**Unjust Enrichment**

54. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

55. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

56. Plaintiff and Class members conferred benefits on Defendant by purchasing the Product.

57. Defendant has knowledge of such benefits.

58. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the Infants' Products and Children's Products are identical, and the Children's Products are in fact suitable and safe for infants.

59. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
### Fraud

60. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

62. As discussed above Defendant did not disclose that the Infants' Products and Children's Products are identical, and the Children's Products are in fact suitable and safe for infants. The false and misleading representations and omissions were made with knowledge of their falsehood. As set forth above, Defendant had notice that the Infants' Products and Children's Products are identical, and the Children's Products are in fact suitable and safe for infants.

63. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Product.

64. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **RELIEF DEMANDED**

65. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

> a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;
>
> b. For an order declaring that Defendant's conduct violates the statutes referenced herein;
>
> c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;
>
> d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;
>
> e. For prejudgment interest on all amounts awarded;
>
> f. For an order of restitution and all other forms of equitable monetary relief;
>
> g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and
>
> h. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 22, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
    Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Blair E. Reed (*Pro Hac Vice* Forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: breed@bursor.com

*Attorneys for Plaintiff*